# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LEKISHA REDDICK, | ] |
| | ] |
|     **Plaintiff,** | ] |
| | ] |
| **v.** | ]    **CIVIL ACTION NO.** |
| | ]    **2:17-cv-00728-KOB** |
| **REPUBLIC PARKING SYSTEM,** | ] |
| | ] |
|     **Defendant.** | ] |

## <u>MEMORANDUM OPINION</u>

This race and sex discrimination and retaliation case comes before the court on Defendant Republic Parking System's motion for summary judgment. (Doc. 26).

According to Plaintiff Lekisha Reddick, in 2014, her supervisor at Republic told her that he did not promote her to Assistant Manager and instead hired a white male because he needed a "white face" to fill the position and "soften" the look of the African-American staff. So a genuine issue exists as to whether Republic failed to promote Ms. Reddick in 2014 because she is African-American. But no evidence exists from which reasonable jurors could determine that she suffered race or sex discrimination or retaliation at any point after 2014 or when Republic terminated her in 2017. So, as further explained below, the court will DENY IN PART and GRANT IN PART Republic's motion for summary judgment.

## I.     STANDARD OF REVIEW

A trial court can resolve a dispositive issue on summary judgment *only* when the moving party establishes two essential elements: (1) no genuine disputes of material fact exist; *and* (2) the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Under the first element of the moving party's summary judgment burden, "'[g]enuine disputes [of material fact] are those in which the evidence is such that a reasonable jury *could* return a verdict for the non-movant.'"  *Evans v. Books-A-Million*, 762 F.3d 1288, 1294 (11th Cir. 2014) (emphasis added) (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)).  And when considering whether any genuine disputes of material fact exist, the court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party.  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

A non-moving party's self-serving declarations can create genuine issues of fact.  *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) ("A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage.").

But only *factual* allegations in a declaration based on personal knowledge can defeat summary judgment; *conclusory* allegations cannot. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). And even if the court doubts the veracity of a self-serving declaration, the court cannot make credibility determinations at the summary judgment stage. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Consistent with the summary judgment standard, the court will present the facts of this case in the light most favorable to Ms. Reddick. The court draws most of the facts from Ms. Reddick's declaration submitted with her response to Republic's motion for summary judgment. (Doc. 34-1). In doing so, the court notes that these may not be the facts presented at trial.

## II.    FACTS

Republic manages parking lots and garages owned by UAB Hospital and provides valet services at the Kirklin Clinic in Birmingham, Alabama.

Ms. Reddick began working for Republic on October 1, 2013 as a cashier at the UAB Hospital parking lots and garages. On November 1, 2013, Republic promoted her to Team Leader and gave her a raise from $9 an hour to $10 an hour. As Team Leader, Ms. Reddick managed the day-to-day operations of the Kirklin Clinic parking location.

Ms. Reddick informed her supervisor and Republic's General Manager for

the UAB parking concession, Kwento Ikwuezunma, that she was interested in filling the vacant Assistant Manager position. In her declaration, Ms. Reddick contends that Mr. Ikwuezunma represented to her that she could apply for the position. (Doc. 34-1 at ¶ 9).

On July 1, 2014, Republic hired Evan Stewart, a white male, as Assistant Manager, and gave him a starting salary of $32,000 annually. Mr. Ikwuezunma did not post a vacancy for the Assistant Manager position or solicit applications.

On the same day that Republic hired Mr. Stewart, Republic promoted Ms. Reddick to Supervisor and gave her a raise from $10 an hour to $13 an hour.

Ms. Reddick asked Mr. Ikwuezunma why he did not give her an opportunity to apply for the Assistant Manager position. According to Ms. Reddick, he responded: "Kisha it's a whole different ball game out here, we have to play these white folks game." (Doc. 34-1 at ¶ 10). Ms. Reddick asked him what he meant by that statement, and Mr. Ikwuezunma said that he needed a "white face" at the Kirklin Clinic to "soften" the look of staff, which, at that time, consisted of all African-American employees. (*Id.*). Mr. Ikwuezunma also told her that the African-American employees had aggressive looks that were not good for business. (*Id.*).

On July 25, 2014, Ms. Reddick recorded a conversation between herself and Mr. Ikwuezunma. During the conversation, Ms. Reddick asked, "you said you

need the white faces up there or whatever, however. Right?" (Doc. 27-9 at 2).

Mr. Ikwuezunma responded, "[u]h-huh." Ms. Reddick reiterated, "[y]ou said you just need that white look," and Mr. Ikwuezunma responded, "[u]h-huh. Well, not even really white. Diverse. If I can get Mexican, Spanish, any of that on here." (Doc. 27-9 at 2). He then said, "[g]oing back to the white face, that was talking about people like Hunter when they were in valet because they need to soften up them people. Because you had Brandon Augusta. You had Leyette. They all aggressive personalities." (*Id.*).

On April 1 and 2, 2015, Ms. Reddick reported Mr. Ikwuezunma's "white face" comment to Republic's District Manager of the Eastern Division, Steve Bartlett, and Republic's Director of Human Resources, Jan Veal. On April 13, 2015, Ms. Reddick, Mr. Bartlett, and Ms. Veal participated in a conference call to discuss the "white face" comment. Ms. Veal apologized for Mr. Ikwuezunma during the conference call.

Then, on April 15, 2015, Republic announced that Mr. Stewart would leave the Assistant Manager position. Republic decided to eliminate the Assistant Manager position and distribute the responsibilities of that position among Ms. Reddick and two other Team Leaders, Brandon Waugh and Jeremy High. Ms. Reddick contends that Republic never made her aware of the plan to split the Assistant Manager responsibilities.

On June 1, 2015, Republic gave Ms. Reddick a raise from $13 an hour to a salary of $32,900 annually.

On September 22, 2015, Ms. Reddick filed a charge of race and sex discrimination with the EEOC based on Republic's hiring of Mr. Stewart as Assistant Manager, Mr. Ikwuezunma's statements that he needed to "soften up the look up front by having a white face up there" and "the whole staff up front is black and they all have an aggressive look," and the failure to promote her upon Mr. Stewart's departure. (Doc. 1-1 at 2–3).

On June 16, 2016, Republic gave Ms. Reddick an annual salary raise to $34,200.

In March 2017, Republic informed Ms. Reddick that she would be responsible for auditing the Kirklin Clinc on Mondays, Wednesdays, and Thursdays by reconciling the cashiers' tickets to the payments received during the day. Republic also assigned auditing duties to Mr. Waugh and Mr. High. (*See* Doc. 27-18 at 1; Doc. 34-1 at ¶ 22).

On May 4, 2017, within 90 days of receiving her right to sue notice from the EEOC on her September 22, 2015 charge of discrimination, Ms. Reddick filed this lawsuit. In her original complaint, she brought a race discrimination claim and a sex discrimination claim against Republic for its failure to promote her to Assistant Manager. On July 17, 2017, she served Republic with a copy of the summons and

complaint in this case.

On July 27, 2017, Mr. Ikwuezunma gave Ms. Reddick a memo entitled "Performance Improvement." In the memo, Mr. Ikwuezunma informed Ms. Reddick that she neglected to perform 11 audits in June and 12 audits in July. (Doc. 27-21 at 2–3). The memo indicated that Ms. Reddick and Mr. Ikwuezunma had a meeting on June 21, 2017 to discuss her failure to perform the audits, but Ms. Reddick contends that the memo represents the first time Mr. Ikwuezunma mentioned her failure to perform audits. (*See id.* at 1; Doc. 34-1 at ¶ 24).

Ms. Reddick continued to neglect her auditing responsibilities; she did not turn in audits for August 7, 9, or 10, 2017. (Doc. 27-1 at ¶ 13; Doc. 34-1 at ¶ 28).

On August 10, 2017, Ms. Reddick emailed Ms. Veal and alleged that Mr. Ikwuezunma had been retaliating against her for requesting a meeting about his "white face" comments in April 2015. As evidence of retaliation, she vaguely referenced Mr. Ikwuezunma entering her office with documents; emailing documents; granting consecutive unexcused absences to employees; not providing documents that she requested; allowing relatives to work in the office; and treating Republic like an individual business. (Doc. 27-22).

Ms. Reddick took sick days off from work from August 10 to 15, 2017. (Doc. 34-1 at ¶ 28). She did not turn in any audits when she returned to work on August 16, 2017. Because of Ms. Reddick's repeated failure to complete the

audits, Republic terminated her employment on August 17, 2017. (Doc. 27-23).

Following her termination, Ms. Reddick filed another charge of discrimination with the EEOC based on her termination. (Doc. 18-2). After the EEOC sent Ms. Reddick her right to sue letter on that charge, she amended her complaint in this case to add her claim that Republic terminated her in retaliation for filing her first charge of discrimination and this lawsuit.

## III. DISCUSSION

Ms. Reddick brings claims of race discrimination, sex discrimination, and retaliation against Republic under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. She alleges three discriminatory adverse employment actions in this case: (1) Republic's failure to promote her to Assistant Manager in July 2014 because of her race; (2) Republic's failure to promote her to Assistant Manager in April 2015 because of her race and sex; and (3) her termination in retaliation for filing this lawsuit and a charge of discrimination with the EEOC. The court separately addresses each alleged act of discrimination below. In doing so, the court finds that only her race discrimination claim based on the failure to promote in July 2014 claim will survive summary judgment, but the court raises concerns about the timeliness of Ms. Reddick's administrative exhaustion of that claim.

## A.    <u>Failure to Promote in July 2014 - Race Discrimination</u>

The familiar *McDonnell Douglas* burden-shifting framework does not apply to Title VII and § 1981 discrimination claims based on direct evidence.  *See Lindsey v. Am. Cast Iron Pipe Co.*, 772 F.2d 799, 801–02 (11th Cir. 1985) ("[The Eleventh Circuit] has repeatedly held that in cases in which there is direct evidence that discrimination was a significant factor in an employment decision, the allocation of proof prescribed by *McDonnell Douglas* does not apply.").  Instead, a plaintiff alleging race discrimination based on direct evidence can survive summary judgment by raising a triable issue of whether she suffered an adverse employment action because of her race.  *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005).

The Eleventh Circuit defines "direct evidence" in the employment discrimination context as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee," or, "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and quotations omitted).  And "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[,] constitute direct evidence of discrimination."  *Id.* (citations and quotations omitted); *see, e.g.*, *Caban-Wheeler v. Elsea*, 71 F.3d

837, 843 (11th Cir. 1996) (statement that company "wanted a black person as Director" was direct evidence of race discrimination); *Lindsey v. Am. Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir. 1985) (statement that company "wanted a younger person" was direct evidence of age discrimination).

Here, in her declaration, Ms. Reddick contends that she told Mr. Ikwuezunma that she had interest in filling the vacant Assistant Manager position and that Mr. Ikwuezunma told her that she could apply for the position. (Doc. 34-1 at ¶ 9). But Mr. Ikwuezunma did not let her apply for the position and instead hired Mr. Stewart, a white male. And, according to Ms. Reddick, Mr. Ikwuezunma told her that he did not promote her or give her an opportunity to apply because "he needed a 'white face' a[t] the Kirklin Clinic to 'soften' the look of staff." (Doc. 34-1 at ¶ 10). A rational trier of fact could credit Ms. Reddick's version of what Mr. Ikwuezunma told her as direct evidence that he failed to promote Ms. Reddick because she is African-American.

On the other hand, Republic contends that Mr. Ikwuezunma's comments only meant that he wanted to increase diversity in the Kirklin Clinic valet staff. (Doc. 27 at 18–21). On the recording of the July 25, 2014 conversation, when Ms. Reddick asked about his "white look" comment, Mr. Ikwuezunma said, "[w]ell, not even really white. Diverse. If I can get Mexican, Spanish, any of that on here." (Doc. 27-9 at 2). He also said, "maybe I worded the whole white thing the

wrong way. But I'm telling you, if you don't get one thing about me, it ain't about white, it ain't about black. I want diversity." (*Id.* at 11). And he sang Ms. Reddick's praises, calling her "the face of Kirklin. . . going to make this thing run." (*Id.* at 12). From this evidence, a rational trier of fact could discredit Ms. Reddick's version of what Mr. Ikwuezunma told her and find that his comments do not suggest that he failed to promote Ms. Reddick because of her race.

But the court finds that a genuine issue of fact exists as to whether Republic failed to promote Ms. Reddick in July 2014 because of her race. Resolving this dispute requires credibility determinations that fall to the jury to make. The court will deny summary judgment on Ms. Reddick's race discrimination claim as to this failure to promote.

But the court finds a separate issue with the timeliness of her 2014 failure to promote claim. The Eleventh Circuit explained the well-settled timely administrative exhaustion requirement for Title VII claims:

> [T]o file a claim for discrimination under Title VII, the plaintiff must first exhaust his administrative remedies, beginning with the filing of a charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). In a non-deferral state, such as Alabama, a plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination. 29 C.F.R. § 1626.7(a); *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1214 n.2, 1220 (11th Cir. 2001). *Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge*. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). The plaintiff has the burden of establishing that he filed a timely charge of

discrimination.  *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

> "[D]iscrete discriminatory acts are not actionable if time barred." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 [] (2002). . . .  The clock for the 180-day filing period starts when the discrete unlawful practice takes place.  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, [628 ] (2007). . . .

*Jordan v. City of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008) (emphasis added).  The record appears to show that Ms. Reddick did not follow these rules.

Republic denied Ms. Reddick the promotion on July 1, 2014, and she discovered the direct evidence of discrimination for the failure to promote, at the latest, on July 25, 2014, the day she recorded her conversation with Mr. Ikwuezunma.  So, the 180-day window in which she could file a charge of discrimination with the EEOC closed in January 2015.  But she did not file her first charge until September 22, 2015.

Republic has not raised the issue of the timeliness of Ms. Reddick's EEOC charge.  But, by separate order, the court will *sua sponte* order Ms. Reddick to show cause why the court should not find her 2014 failure to promote claim time-barred.  *See Ritchey v. S. Nuclear Operating Co.*, 423 F. App'x 955, 958 (11th Cir. 2011) (finding that the district court, when ruling on a motion for summary judgment, did not err in finding *sua sponte* that the plaintiff's Title VII claim was untimely because the adverse employment action occurred more than 180 days before the plaintiff filed her EEOC charge).  Ms. Reddick's claim will continue at

least until a determination of this issue.

### B. <u>Failure to Promote in April 2015 - Race and Sex Discrimination</u>

Ms. Reddick contends that Republic denied her the Assistant Manager position again when Mr. Stewart vacated the position on April 15, 2015 because of her race and sex. She does not point to any additional evidence of racial discrimination for this claim besides Mr. Ikwuezunma's "white face" comments that support her first failure to promote claim. And she adds a sex discrimination claim only because Mr. Ikwuezunma told her—in some unknown context—that in his native country, Nigeria, "men are in leadership positions and women are expected to follow." (Doc. 34-1 at ¶ 19). In any event, no failure to promote actually occurred in April 2015, so her claims fail for lack of an adverse employment action.

Whether a plaintiff relies on direct or circumstantial evidence for her discrimination claim, she must always allege an adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Morris*, 402 F.3d at 1081. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d

1296, 1300 (11th Cir. 2008) (quotations omitted).  No such action occurred in April 2015.

Republic contends that, "[r]ather than hire a new Assistant Manager, Republic decided to eliminate the Assistant Manager position and distribute the responsibilities of that position among Plaintiff, and Team Leaders Brandon Waugh and Jeremy High."  (Doc. 27 at 8).  Republic's Director of Human Resources, Jan Veal, testified at her deposition as to the restructuring of the Assistant Manager position:

Q  And then was the [Assistant Manager] position filled after [Mr. Stewart] left?

[Ms. Veal]  No.

Q  Do you know who did the job?  The Assistant Manager job?

A  There was a restructuring between the Supervisor and Team Leaders and the responsibilities of the Assistant Manager was dispersed between those positions.

Q  And if there's a decision, such as that, not to fill a job and change some of the job assignments is that something [Mr. Ikwuezunma] makes on his own or he has to clear that with you or someone on the Corporate level?

A  He doesn't have to get approval necessarily from someone from HR but we were involved in that discussion when he made those decisions.

Q  And did some of the duties then go to Ms. Reddick?

A  Yes.

Q  Do you know which duties went to her?

A  She had more responsibilities in other facilities and more administrative responsibilities and more supervisory responsibilities in terms of the Team Leaders reported to her.

(Doc. 27-14 at 6–7).  In recognition of Ms. Reddick's additional duties, Republic gave her a raise from $13 an hour to a salary of $32,900 annually.  (Doc. 27-16; Doc. 34-1 at ¶ 18).

In response, Ms. Reddick contends that she "was never made aware of any plan to split the responsibilities of the Assistant Manager position between myself, Jeremy High, and Brandon Waugh."  (Doc. 34-1 at ¶ 18).  But she does not offer any evidence to support her own version of the restructuring or allege any specific adversity that she suffered.  She does not allege any facts concerning how Republic reached its decision; whether Republic had ever eliminated a position in similar circumstances in the past; whether Republic ever promised her the position after Mr. Stewart's departure; or, even if she was somehow entitled to the position, what benefits, opportunities, or status she lost by not receiving the title but still receiving a raise from $13 an hour to $32,900 annually.  So, no genuine issue exists as to whether Republic's decision to eliminate the Assistant Manager position upon Mr. Stewart's departure constitutes an adverse employment action as to Ms. Reddick.  The court will enter summary judgment for Republic on Ms. Reddick's claims based on the April 2015 failure to promote.

### C.    **Retaliation**

Finally, Ms. Reddick contends that Republic terminated her on August 17, 2017 in retaliation for filing a charge of discrimination with the EEOC on September 22, 2015 and for serving this lawsuit on Republic on July 17, 2017. As further explained below, her retaliation claim fails because no genuine issue exists that Republic's legitimate non-discriminatory reason for terminating her—her repeated failure to perform audits as all Team Leaders had to do—is not pretext for retaliation.

The *McDonnell Douglas* burden-shifting analysis applies to Title VII and § 1981 retaliation claims based on circumstantial evidence. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016); *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). "To establish a prima facie case of retaliation . . . , 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Bryant*, 575 F.3d at 1308.

If the employer satisfies its burden, then the burden shifts back to the plaintiff to prove that the employer's "proffered reason really is a pretext for unlawful [retaliation]." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008). "A plaintiff can do so directly, by persuading the court that a [retaliatory] reason more likely than not motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Paschal v. United Parcel Serv.*, 573 F. App'x 823, 825 (11th Cir. 2014) (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)).

Here, the court finds that, with circumstantial evidence, Ms. Reddick has established a *prima facie* case of retaliation based on the close temporal proximity between serving this lawsuit on Republic on July 17, 2017 and two events: (1) her termination on August 17, 2017; *and* (2) Republic giving her the "Performance Improvement" memo on July 27, 2017, disputably the first time Republic informed her of her work deficiencies. But her claim will not survive summary judgment because she has not raised a genuine issue of pretext.

Under the first element of Ms. Reddick's *prima facie* case, no dispute exists that she engaged in statutorily protected expression by filing this lawsuit. *See* 42 U.S.C. § 2000e-3(a); *Gerard v. Bd. of Regents of State of Ga.*, 324 F. App'x 818,

825 (11th Cir. 2009) ("Statutorily protected expression includes . . . discrimination-based lawsuits.").  And, under the second element of her *prima facie* case, she suffered an adverse employment action when Republic terminated her on August 17, 2017.  Republic disputes Ms. Reddick's ability to satisfy the final requirement of her *prima facie* case that she show a causal connection between this lawsuit and her termination.

As Ms. Reddick does here, a plaintiff can establish causation for her *prima facie* case by "showing close temporal proximity between the statutorily protected activity and the adverse employment action."  *Cooper Lighting,* 506 F.3d at 1364.  Temporal proximity, by itself, can raise a genuine issue of causation if it is "very close."  *Id.*  And evidence of temporal proximity plus "other evidence tending to show causation" can raise a genuine issue of causation.  *Id.*

Here, Ms. Reddick successfully offers evidence of close temporal proximity plus "other evidence tending to show causation."  *Only one month* passed between service on Republic on July 17, 2017 and Ms. Reddick's termination.  And, on July 27, 2017, *only ten days after Ms. Reddick served Republic*, Mr. Ikwuezunma gave her the "Performance Improvement" memo; according to Ms. Reddick, the memo was the first time that Republic ever disciplined her for her work performance. (*See* Doc. 34-1 at ¶ 24).  So the court finds that a genuine issue of fact exists as to a causal connection between Ms. Reddick's filing this lawsuit and her termination.

Next, the burden shifts to Republic to articulate a legitimate non-discriminatory reason for terminating Ms. Reddick. Republic has satisfied its burden by contending that it terminated Ms. Reddick because she failed to complete 26 audits from June to August 2017 and never caught up on the audits after Republic informed her of the several missing audits.

Now the burden shifts back to Ms. Reddick to raise a genuine issue that Republic's reason for terminating her is pretext for retaliation. Rather than point to any record evidence to show pretext, she asks five questions and expresses her suspicions:

> (1) Did Reddick really neglect to perform audits twenty-six times from June 2017 to her termination date on August 17, 2017?; (2) If so, why did the Defendant wait so long to initiate any corrective action?; (3) Isn't it suspicious that from March 1, 2017 to July 27, 2017, Reddick was not made aware of any alleged audit issues?; (4) Isn't it as equally suspicious that ten days after the Defendant was served with her complaint, Reddick was informed of numerous missed audits?; and[] (5) Where is the disciplinary paper trial representing Reddick's neglect of duty?

(Doc. 34 at 27).

But Ms. Reddick's suspicions cannot by themselves raise a genuine issue of material fact. So she leaves the court to perform her job for her, that is, to cite *evidence* that could cast doubt on Republic's explanation for terminating her.

Circumstantial evidence of pretext "may include . . . the same evidence offered initially to establish the prima facie case." *Wilson*, 376 F.3d at 1088. So

the court considers the evidence Ms. Reddick uses for the causation element of her *prima facie* case—the temporal proximity between serving this lawsuit and the scrutiny of her performance and termination and the absence of prior corrective action—as evidence offered to show pretext.

But the evidence fails to raise a genuine issue of pretext. Even if Republic had not mentioned Ms. Reddick's failure to perform audits until 10 days after service of this lawsuit, no dispute exists that, even after Mr. Ikwuezunma informed Ms. Reddick on July 27, 2017 that she was missing audits, she did not turn in any more audits or catch up on audits she missed as instructed. So, even if the timing of the "Performance Improvement" memo was "suspicious," Ms. Reddick failed to take the opportunity given to her to correct her oversights. Her failure to do so negates any "suspicion" as to the legitimate non-discriminatory reason for her termination.

Further, every Team Leader—not just Ms. Reddick—had to perform audits. Ms. Reddick was in charge of performing audits only on Mondays, Wednesdays, and Thursdays. Republic assigned the remaining auditing duties to the other Team Leaders, Brandon Waugh and Jeremy High. (*See* Doc. 27-18 at 1; Doc. 34-1 at ¶ 22). So Republic did not single out Ms. Reddick and set her up to fail. Rather, it expected her to perform her job duties like every other Team Leader. When she repeatedly failed those duties for at least two months, even after Republic gave her

a chance to catch up, Republic terminated her.

Put simply, Republic contends that it terminated Ms. Reddick because she did not turn in audits or catch up on audits as instructed and required of all Team Leaders; and no dispute exists that she did not turn in audits or catch up on audits as instructed and required of all Team Leaders. She has not offered, and the court has not found, any evidence to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Republic's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265. So the court finds that she has failed to satisfy her burden to raise a genuine issue of pretext. The court will enter summary judgment for Republic on Ms. Reddick's retaliation claim.

## IV.    CONCLUSION

By separate order, the court will **DENY IN PART** and **GRANT IN PART** Republic's motion for summary judgment. The court will **DENY** the motion for summary judgment on Ms. Reddick's race discrimination claim based on the failure to promote her to Assistant Manager in July 2014. The court will **GRANT** the motion for summary judgment on Ms. Reddick's race and sex discrimination claims based on the April 2015 failure to promote and on her retaliation claim.

Also, by separate order, the court will *sua sponte* order Ms. Reddick to show cause why the court should not find her 2014 failure to promote claim time-barred

for failure to timely file an EEOC charge. The court will allow Republic to file a brief in response and Ms. Reddick an opportunity to reply.

**DONE** and **ORDERED** this 25th day of March, 2019.

_Karon O. Bowdre_
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE